IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kimberly Polster, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 6676 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| Van Ru Credit Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Polster filed a Complaint against the Van Ru Credit Corporation for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. The parties filed cross-motions for summary judgment. For the following reasons, the Court grants Van Ru Credit Corporation's Motion for Summary Judgment [19] and denies Kimberly Polster's Motion for Summary Judgment [17].

## BACKGROUND

The parties do not dispute the following facts unless otherwise noted.

Prior to May 13, 2014, Defendant Van Ru Credit Corporation ("Van Ru" or "debt collector") received from its client, Northshore Medical Healthsystem, ("Northshore" or "creditor") the debts of Plaintiff Kimberly Polster ("Polster" or "consumer") under account numbers 26073536-0205922172 ("Debt #1"), 6607734-0205922172 ("Debt #2"), and 28444892-0205922172 ("Debt #3"). (Dkt. 21-1, Plaintiff's Resp. to Defendant's LR 56.1 Statement of Facts, ¶ 5; Dkt. 18-2, at 25-26, Exs. A and B; Dkt. 18-3, Ex. C, Aff. Michael Martin, ¶¶ 7-8.) Later that year, in December 2014, Polster incurred further debts (Debt #4 and #5) with Northshore after she received medical treatment for a bulging disc. Northshore did not place

1

these debts with Van Ru until May 2015. (Dkt. 17-2, at 2, 4, Ex. A and B; Dkt. 18-2, Ex. B, ¶ 3; Dkt. 20-1, Defendant's Resp. to Plaintiff's LR 56.1 Statement of Facts, ¶¶ B(1), B(6).)

During that time, Polster voluntarily filed for Chapter 7 bankruptcy on March 6, 2015, which the parties agree discharged the debts that Polster had incurred with Northshore. (Dkt. 20-1, ¶¶ B(3)-(4); Dkt. 18-4, Ex. D; Dkt. 21-1, ¶ 6.) Polster's public bankruptcy petition listed Northshore and Van Ru as creditors. (Dkt. 18-4, Ex. D, 47-48.) Her petition also listed her name, address, and the last four digits of her social security number, as well as the name and address of her bankruptcy attorney, which were also listed on the public notice for the petition's meeting of creditors. (*Id.* at 2-4; Dkt. 21-2, Bankruptcy Creditors Meeting Notice, at 12.) According to these documents, David H. Cutler, a bankruptcy attorney at Cutler & Associates, represented Polster in these proceedings. (Dkt. 21-1, ¶¶ 25-26; Dkt. 18-2, Ex. B, Representation Agreement; Dkt. 18-1, Ex. A, Polster Dep., 39:22-41:6, 42:18-21.) Cutler informed Polster that, if anyone sought to collect on a debt that was protected by her bankruptcy petition, he could connect Polster with an attorney who could represent her in such a matter. (Dkt. 21-1, ¶ 27; Dkt. 18-1, Ex. A, 43:4-44:1; 53:6-18.) Indeed, Cutler later referred Polster to Richard Meier, the attorney representing Polster on this Complaint. (*Id.*; Dkt. 3.) No one, including Polster, notified Van Ru that Meier would represent Polster in this matter.[1] (Dkt. 21-1, ¶¶ 28-29.)

On March 11, 2015, the bankruptcy court mailed Northshore and Van Ru notice of Polster's bankruptcy filing. (Dkt. 20-1, ¶ B(5); Dkt. 21-2, Ex. C, at 14-15.)[2] On March 17, Van Ru received a copy of Polster's bankruptcy petition, which identified Polster's debts that Northshore had placed with Van Ru by that time – specifically, Debts #1, 2, and 3. That same day, Van Ru closed the accounts associated with these debts and returned them to Northshore.

---

[1] Polster denies the relevance of this fact, but does not dispute it. (*See* Dkt. 21-1, ¶¶ 28-29.)
[2] Parties dispute whether Northshore actually received this notice. (Dkt. 20-1, ¶ B(5).)

2

From this point forward, Van Ru did not direct any further collection communication to Polster regarding Debts #1, 2, and 3. (Dkt. 21-1, ¶¶ 8-9; Dkt. 18-1, Ex. A, 32: 9-15; Dkt. 18-3, Ex. C, ¶ 9; Dkt. 18-5, Ex. E, ¶ 5; Dkt. 18-6, Ex. F, Michael Martin Dep., 16:15-19.)

The same cannot be said for Debts #4 and 5. Northshore placed these debts with Van Ru under accounts 34367813-0205922172 ("Debt #4") and 34440969-0205922172 ("Debt #5"), on May 11 and May 18, 2015, respectively, after Polster filed her March 2015 bankruptcy petition. (Dkt. 20-1, ¶¶ B(6), B(9); Dkt. 18-3, Ex. C, ¶ 10; Dkt. 18-6, Ex. F, 10:20-12:10.) This happened despite the fact that Northshore and Van Ru agreed that Northshore would not send Van Ru accounts that were subject to bankruptcy and that Northshore "shall notify" Van Ru about any bankruptcies of which Northshore "may or should have knowledge" that would affect any debts placed with Van Ru.[3] (Dkt. 20-1, ¶ B(13); Dkt. 18-3, Ex. C, ¶ 13; Ex. F, 34:24-35:6; Dkt. 17-2, Ex. G, at 53; Dkt. 21-1, ¶¶ 19-20.) Yet Van Ru never received notice from Northshore that Polster's Debts #4 and 5 were subject to bankruptcy. (Dkt. 18-3, Ex. C, ¶¶ 14, 21; Dkt. 18-6, Ex. F, 16:20-23; Dkt. 18-5, Ex. E, ¶ 5.) At no point did Northshore provide Van Ru with Polster's social security number to associate with these debts. (Dkt. 21-1, ¶ 13; Dkt. 18-5, Ex. E, ¶ 5; Dkt. 18-6, Ex. F, 17:9-17, 23:2-6; 29:13-15; 30:14-15; Dkt. 18-3, Ex. C, ¶ 11.)

As a result, even though Van Ru has an automated process to review the accuracy of its accounts – and thus avoid collecting debts from people in bankruptcy – that process did not catch Polster's March 2015 bankruptcy and its implications for Debts #4 and 5. (*See* Dkt. 20-1, ¶ B(12); Dkt. 21-1, ¶¶ 16, 18; Dkt. 18-3, Ex. C, ¶ 3; Dkt. 18-5, Ex. E, ¶ 5; Dkt. 18-6, Ex. F, 15:3-9; 26:6-13.) For that process, when Van Ru receives an account from a creditor, Van Ru runs the name and social security number associated with the account through LexisNexis in a

---

[3] Parties dispute whether Van Ru and Northshore have an understanding that Northshore will not even *refer* accounts subject to bankruptcy. (*See* Dkt. 21-1, ¶ 11.)

"bankruptcy scrub." To perform the scrub, Van Ru needs an individual's social security number to be associated with the account. The scrub then searches for that individual's bankruptcy filings to-date. LexisNexis retains the information and rescrubs the accounts weekly. (Dkt. 21-1, ¶¶ 16-18; Dkt. 18-3, Ex. C, ¶¶ 3-4; Dkt. 18-6, Ex. F, 17:9-17.) Because Van Ru did not have Polster's social security number associated with Debts #4 and 5, it did not perform a bankruptcy scrub on these accounts. (Dkt. 21-1, ¶ 18; Dkt. 18-5, Ex. E, ¶ 5.) Van Ru has a process for manually reviewing accounts to verify whether a bankruptcy scrub has produced accurate information, but for that process to occur, it has to perform the scrub in the first place, which requires a social security number. The system does not alert anyone at Van Ru to review an account if the scrub does not produce results. (Dkt. 20-1, ¶ B(12); Dkt. 18-6, Ex. F, 18:4-21:9, 24:7-25:22, 33:13-20; 34:13-23.) Alternatively, Van Ru relies on notice from consumers after they receive a debt collection letter from Van Ru. (*See* Dkt. 21-1, ¶ 22; Dkt. 18-3, Exs. 1 and 2, at 7, 10; Dkt. 18-3, Ex. C, ¶ 5.) Van Ru did not hear from Polster about her bankruptcy. (*See* Dkt. 21-1, ¶¶ 24, 29; Ex. A, 44:11-45:5; Dkt. 18-2, ¶¶ 2-4, 19; Dkt. 18-3, Ex. C, ¶ 21.)

Generally, when Van Ru receives notice that an account is subject to bankruptcy, it "immediately ceases collection efforts, closes the account with a notation reflecting the bankruptcy and returns the account to the creditor."[4] (Dkt. 21-1, ¶ 23; Dkt. 18-5, Ex. E, ¶ 5; Dkt. 18-6, Ex. F, 18:14-18; Dkt. 18-3, Ex.C, ¶ 6.) With Northshore specifically, Van Ru does not report any previous issues with receiving bankruptcy-afflicted accounts. (Dkt. 21-1, ¶ 12; Dkt. 18-6, Ex. F, 35:7-12.) Yet in Polster's case, without her social security number affiliated with Debts #4 and 5, Van Ru's system bypassed performing a bankruptcy scrub on these accounts when they came in on May 11 and May 18, 2015, due to "missing info," namely Polster's social security number. (Dkt. 20-1, ¶¶ B(6)-(7), B(9)-(10); Dkt. 18-3, Ex. 3, at 13, 16.)

---

[4] Polster denies the relevance of this fact, but does not dispute it. (*See* Dkt. 21-1, ¶ 23.)

Consequently, Van Ru sent Polster a collection letter for Debt #4 on May 12, 2015, and for Debt #5 on May 19, 2015. (Dkt. 20-1, ¶¶ B(8), B(11); Dkt. 18-3, Ex. C, ¶ 15; Dkt. 18-3, Exs. 1 and 2, at 7, 10.) Van Ru's letters to Polster stated:

> The above account(s) has been placed with us for collection. This is an important matter and deserves your immediate attention.
>
> Your payment, made payable to NorthShore Univ Hlthsys, may be mailed in the enclosed envelope. If you have any questions or wish to discuss your account or payment options, you may contact us…
>
> **Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.**
>
> **This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

(Dkt. 18-3, Exs. 1 and 2, at 7, 10.) (emphasis in original.)

After receiving these letters, Polster did not contact Van Ru about her bankruptcy discharge or, specifically, the validity of Debts #4 and 5. (*See* Dkt. 21-1, ¶¶ 24, 29; Ex. A, 44:11-45:5; Dkt. 18-2, ¶¶ 2-4, 19; Dkt. 18-3, Ex. C ¶ 21.) Polster does not know whether one of her attorneys contacted Van Ru at this time. (Dkt. 18-1, Ex. A, 45:10-46:1.)

After receiving a complaint on June 18, Van Ru ceased communication with Polster.[5] (Dkt. 18-5, Ex. E, ¶ 5.) Neither did Van Ru contact Northshore to verify the accuracy of the

---

[5] During this period, between May 12 and June 18, Van Ru also telephoned Polster every one to five days between May 12 and June 18, 2015, though they never spoke during this time. (*See* Dkt. 18-3, Ex. 3, at 13-15; Dkt. 18-5, Ex. E, ¶ 5.) Polster testified that she may have received a phone call from Van Ru to her cell phone during this period, but she did not provide details or testify to any further communication from Van Ru. (Dkt. 18-1, Ex. A, 32:9-34:7.)

5

information in these accounts. (Dkt. 20-1, ¶ B(16).) Van Ru did not contact Northshore about Polster's Debts #4 and 5 until December 11, 2015, when Van Ru sent them two e-mails, first to notify Northshore about this suit and then to notify Northshore that Van Ru intended to defend this suit. (*See id.* Dkt. 21-2, at 24, Ex. E; Dkt. 17-2, Ex. H, at 55; Dkt. 18-6, Ex. F, 39:20-41:17.)

Polster testifies that she experienced stress and anxiety as a result of the letters she received from Van Ru in May 2015 after her March 2015 bankruptcy petition. (Dkt. 21-1, ¶ 30; Dkt. 18-1, Ex. A, 56:13-57:13.) Polster did not seek medical or professional treatment. (*Id.*; Dkt. 18-2, Ex. B, ¶ 6.) Polster testified:

> A: I was stressed, and some anxiety issues due to the letters that I received. I don't know if damages – it didn't physically harm me or anything, but emotionally, like I said, it was stressful and caused a lot of anxiety and I was confused.
>
> Q: So I guess my next question would be you said nothing physical, did you have any physical manifestations in connection with the stress or the anxiety?
>
> A: I think stress is a little physical, but I didn't seek any medical care for it, I just was concerned about it and I thought it was all over with, and I started receiving the letters again, so I was getting stressed and concerned like what's going on now and I'll have to start dealing with this again.

Dkt. 18-1, Ex. A, 56:13-57:13. Polster also seeks damages for time spent prosecuting this litigation, including sitting for her deposition and responding to discovery. (Dkt. 21-1, ¶ 31; Dkt. 18-1, Ex. A, 56:13-58:10.)

## **STANDARD OF REVIEW**

Courts grant summary judgment where the movant shows that no genuine dispute of material fact remains and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal

quotation marks and citation omitted). Courts appropriately grant summary judgment where "no reasonable jury could rule in favor of the nonmoving party." *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citation omitted). On cross-motions for summary judgment, each movant must satisfy the requirements. *See Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Therefore, when considering Polster's Motion, the Court views all evidence in the light most favorable to Van Ru, and when considering Van Ru's Motion, the Court views all evidence in the light most favorable to Polster. *See e.g.*, *Hinsdale v. Village of Westchester, Illinois*, No. 15 C 4926, 2017 WL 991489, at *3 (N.D.Ill. Mar. 15, 2017) (citing *Int'l Bhd. Of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). Nonmoving parties must still put forth enough evidence to support reasonable inferences, as courts "draw only the reasonable inferences" and "are not required to draw every conceivable inference from the record." *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (internal quotations and citations omitted); *see e.g.*, *Cordon v. Centex Homes*, 835 F.Supp.2d 543, 548 (N.D.Ill. 2011).

## DISCUSSION

Polster filed this Complaint pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Dkt. 1.) Polster then filed this Motion for Summary Judgment (Dkt. 17), while Van Ru filed a Cross-Motion for Summary Judgment (Dkt. 19).[6]

**I. FDCPA § 1692e(2) & (10) and the Bona Fide Error Defense (Counts I and II)**

In her Motion for Summary Judgment and Response to Van Ru's Motion, Polster argues that the FDCPA provides a strict liability cause of action under Sections 1692e(2) and (10) anytime a debt collector attempts to collect a debt that is part of a bankruptcy petition. As such, Polster contends that Van Ru violated the FDCPA by sending her the two May 2015 letters.

---
[6] Parties do not dispute that Polster's debts constituted "consumer debts" under the FDCPA. (*See* Dkt. 20-1, ¶ B(2).)

7

(Dkt. 17-3, at 1, 3; Dkt. 21, at 3, 5.)  Polster further argues that Van Ru's conduct does not qualify for the FDCPA's bona fide error defense because Van Ru has not adapted a reasonable procedure to avoid such errors, given that Van Ru relies on creditors, consumers, and consumers' attorneys to provide the information needed to guard against error, particularly social security numbers, without which an account bypasses the bankruptcy scrub.  (Dkt. 17-3, at 4-6.)  In response and in its own Motion for Summary Judgment, Van Ru argues that its conduct constitutes bona fide error under the FDCPA because its procedures to avoid mistakes, while imperfect, are reasonable under the law.  (Dkt. 19-1, at 3; Dkt. 20, at 4; Dkt. 23, at 2-7.)

Broadly, Section 1692e prohibits "any false, deceptive, or misleading representation…with the collection of any debt," including the "false representation of [the]…legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt…." 15 U.S.C. § 1692e(2); 15 U.S.C. § 1692e(10).  In the event of an FDCPA violation that is "clear" on the face of a collection letter, the plaintiff is entitled to summary judgment. *See Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005).  To enter summary judgment for the defendant, a district court cannot decide based solely on the debt collector's lack of intent or knowledge.  *See Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995-97 (7th Cir. 2003) (internal citations omitted).  In this sense, the FDCPA imposes strict liability because the consumer is still entitled to damages even if the defendant did not intend to falsely represent the collection of a debt.  *See id.* at 995 (citing *Gearing V. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (internal citations omitted).  At the same time, even if defendants are liable under 1692e, they can still put forth a bona fide error affirmative defense.  *See* 15 U.S.C. § 1692k(c).

The parties do not dispute that Van Ru sent Polster a collection letter for her debts even though she had discharged these debts in bankruptcy. (*See* Dkt. 19; Dkt. 20; Dkt. 20-1, ¶¶ B(5), B(8), B(11); Dkt. 18-3, Ex. C, ¶ 15; Dkt. 18-3, Exs. 1 and 2, at 7, 10; Dkt. 21-2, Ex. C, at 14-15.) The language in Van Ru's letter strongly resembles that of the letter in *Turner*, where the district court erred in granting summary judgment for the defendant because a reasonable jury could have concluded that the letter would mislead the consumer by implying that she needed to pay the debt listed despite having discharged the debt in bankruptcy. *See Turner*, 330 F.3d at 994-95. As in *Turner*, Van Ru's May 2015 letters to Polster indicated that Polster's debts had been placed with Van Ru for collection, invited Polster to pay the debt, and notified Polster that she had thirty days to dispute the validity of the debt. (*See* Dkt. 18-3, Exs. 1 and 2, at 7, 10.) By sending such a letter to Polster, Van Ru's conduct could reasonably be said to violate the statute by falsely representing the status of Polster's debt or using this representation to collect the debt. *See* 15 U.S.C. § 1692e(2); 15 U.S.C. § 1692e(10); *Turner*, 330 F.3d at 994-95.

However, Van Ru asserts a bona fide error affirmative defense. (*See* Dkt. 19-1, at 3; Dkt. 20, at 3.) The FDCPA's Section 1692k(c) allows collectors to avoid Section 1692e liability by showing that the conduct occurred because of a "bona fide error." *See* 15 U.S.C. § 1692k(c). Defendants claiming a bona fide error defense must show with a preponderance of the evidence, first, that the collector did not intend to violate the FDCPA, and second, that the error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See Turner*, 330 F.3d at 996-97 (quoting *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997)); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (citing *Nielsen v. Kickerson*, 307 F.3d 623, 641 (7th Cir. 2002) (debt collector may use bona fide error defense "because it had no intent to violate the FDCPA, although its actions were deliberate")).

9

First, Polster concedes that Van Ru did not intend to violate the FDCPA when it sent the May 2015 letters to Polster.[7] (Dkt. 17-3, at 4.) *See Turner*, 330 F.3d at 996-97; *Kort*, 394 F.3d at 537. Regardless, Polster waives her argument on this first element of the bona fide error defense by failing to develop the issue in the pleadings. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *see e.g., Aberman v. Board of Education of City of Chicago*, No. 12 C 10181, 2014 WL 4912139, at *2 (N.D.Ill. Sept. 30, 2014) (citing *Alioto*) (parties waive arguments that they do not address in their response). (*See* Dkt. 17; Dkt. 21; Dkt. 22.) More critically to this case, the parties dispute the second element of the affirmative defense: whether Van Ru employed procedures sufficiently reasonable to provide that its May 2015 letters to Polster constituted bona fide error. (*See* Dkt. 17-3, at 4.)

Courts have found that collectors' utilizing even a couple of different types of precautions shows that the collector fulfilled her responsibility to establish a reasonable procedure to protect against making false representations to consumers. *Ross*, 480 F.3d at 497 (citing *Hyman*, 362 F.3d at 968-69). For instance, reasonable measures include the debt collector entering an agreement where its creditor-client would not knowingly sell the collector a discharged debt, or requiring that the creditor notify the collector if, after placing a debt with the collector, the creditor discovers that a debt has been discharged. *See id.* at 996; *Ross v. RJM Acquisitions Funding, LLC,* 480 F.3d 493, 497 (7th Cir. 2007). A debt collector can also build a

---

[7] In her Motion for Summary Judgment, Polster admits that Van Ru's "violations may not have been intentional," and proceeds to argue that Van Ru's procedures were nonetheless unreasonable. (Dkt. 17-3.) To the extent that this statement does not already concede that Van Ru did not intend to violate the FDCPA through sending the May 2015 letters to the plaintiff, Polster waives this argument by failing to develop it even after discovery and when moving for summary judgment. *See e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Aberman v. Board of Education of City of Chicago*, No. 12 C 10181, 2014 WL 4912139, at *2 (N.D.Ill. Sept. 30, 2014) (citing *Alioto*) (finding well-established that a party waives an argument by failing to make it before the court). The weight of the evidence supports that Van Ru did not intend for the error to transpire, considering that: Van Ru had several means in place to catch such errors, even though they failed in this instance (Dkt. 20-1, ¶¶ B(8), B(11)-(12); Dkt. 21-1, ¶¶ 16, 22; Dkt. 18-3, Ex. C, ¶¶ 3, 5; Dkt. 18-6, Ex. F, 18:4-21:9, 24:7-25:22, 33:13-20; 34:13-23); Van Ru compliance manager, Michael Martin, testified that Van Ru sent the May 2015 letters to Polster in error (Dkt. 18-3, Ex. C, ¶ 16); and when Van Ru learned that Polster had discharged Debts #1, 2, and 3, it ceased communications with Polster and closed those accounts. (Dkt. 18-3, Ex. 3, at 13-15; Dkt. 18-5, Ex. E, ¶ 5.)

reasonable procedure by conducting bankruptcy scrubs and promising to promptly cease collecting any debt for which it has received notification of its discharge. *Id.*

A collector need not employ all of these means to build a reasonable process. *See id.; Hyman v. Tate*, 362 F.3d 965, 968-69 (7th Cir. 2004). Nor does the bona fide error defense "require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *See Kort*, 394 F.3d 530, at 539 (quoting *Hyman*, 362 F.3d at 968). For instance, "the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error defense.'" *Hyman*, 362 F.3d at 968 (finding proactive procedures unnecessary where debt collector "had adequate procedures in place, first by relying on [creditor] not to forward accounts in bankruptcy, and then by assuring that any accounts mistakenly referred for collection were promptly removed"). A collector can indeed rely on a creditor's representations about the validity of the debt. *See e.g.*, *Hartman v. Meridian Fin. Servs., Inc.*, 191 F.Supp.2d 1031, 1045 (W.D. Wis. 2002) (citing *Jenkins*, 124 F.3d at 828).

Given the facts of this case, a reasonable jury would have to find under law that Van Ru's conduct resulted from bona fide error. Van Ru shows the procedures it has in place to protect against errors like this. In particular, Van Ru performs initial and regular bankruptcy scrubs on its accounts to ensure that it closes accounts and ceases communication with consumers who have debts discharged in bankruptcy. (*See* Dkt. 21-1, ¶¶ 16-18; Dkt. 18-3, Ex. C, ¶¶ 3-4; Dkt. 18-5, Ex. E, ¶ 5; Dkt. 18-6, Ex. F, 17:9-17; 18:4-21:9, 24:7-25:22, 33:13-20; 34:13-23.) Van Ru also has an agreement with Northshore that the creditor "shall notify" Van Ru about any relevant bankruptcies of which Northshore "may or should have knowledge."[8]

---

[8] The parties dispute whether Northshore also agreed that it would not refer discharged debts to Van Ru. (*See* Dkt. 21-2, ¶ 11.) However, the dispute is not material because the law in this Circuit would not require this additional measure to constitute a reasonable procedure. *See Ross*, 480 F.3d at 497; *Kort*, 394 F.3d at 539 (quoting *Hyman*, 362 F.3d at 968); *Hyman*, 362 F.3d at 968-69.

*Id.* (Dkt. 20-1, ¶ B(13); Dkt. 18-3, Ex. C, ¶ 13; Ex. F, 34:24-35:6; Dkt. 17-2, Ex. G, at 53; Dkt. 21-1, ¶¶ 19-20.) Further, as part of its procedures, Van Ru agrees to promptly cease any attempt to collect on a debt once it receives notice of its discharge. (Dkt. 18-5, Ex. E, ¶ 5.)

Other courts have found debt collectors using these types of procedures to be entitled to the bona fide error defense. In *Ross*, the Seventh Circuit found the defendant's procedures reasonable. The defendant, debt collector RJM Acquisitions, relied on four procedures to minimize these types of error: developing an understanding with client-creditors that they would not knowingly place discharged debts with RJM; conducting a bankruptcy search; relying on a client-creditor's agreement to notify RJM if it received notice of a bankruptcy discharge affecting one of the debts placed; and promptly ceasing any attempt to collect a debt once RJM received notice of that debt's discharge. *Ross*, 480 F.3d at 497. RJM's procedures were reasonable particularly in light of *Hyman*, where a debt collector utilizing only the first and fourth methods constituted reasonable procedure. *Id.* (citing *Hyman*, 362 F.3d at 968-69).

Van Ru relies on a similar suite of procedures that together constitute a reasonable process for ensuring against such errors. Like the defendant in *Ross*, Van Ru uses a bankruptcy scrub. The parties dispute the scrub's reasonableness because Van Ru's system does not flag for follow up those accounts that lack social security numbers, without which Van Ru's system cannot perform a bankruptcy scrub, as in Polster's case. (*See* Dkt. 21-1, ¶¶ 16-18; Dkt. 18-3, Ex. C, ¶¶ 3-4; Dkt. 18-5, Ex. E, ¶ 5; Dkt. 18-6, Ex. F, 17:9-17; 18:4-21:9, 24:7-25:22, 33:13-20; 34:13-23.) However, a similar flaw in *Ross* did not prevent the Court from finding the digital search process reasonable. The computerized bankruptcy search there did not catch that plaintiff Delisa Ross had discharged the debts in question because the creditor had sold the account to the collector under the name "Lisa Ross." *Ross*, 480 F.3d at

12

496. The Court nevertheless found the defendant "mindful of its legal duty not to dun a discharged bankrupt" by pursuing this computerized search of bankruptcies, even if it failed to turn up the results of Delisa Ross's bankruptcy. *Id.* at 496-97. Because Van Ru's bankruptcy scrub automatically bypasses accounts missing a social security number, Polster argues that Van Ru cannot claim to maintain reasonable procedures when they are "never performed." (Dkt. 21, at 6-7.) Yet Polster does not argue, and the record does not show, that Van Ru "never" utilizes the bankruptcy scrub procedures. (*See id.*) More precisely, Van Ru does not scrub accounts without a social security number because the system will not return results. (*See* Dkt. 20-1, ¶ B(12); Dkt. 21-1, ¶ 18; Dkt. 18-5, Ex. E, ¶ 5.) Regardless, other courts have not required debt collectors under the FDCPA to perform bankruptcy scrubs in order for their procedures to reasonably guard against 1692e errors. *See e.g.*, *Thomas v. Boscia*, No. 08-V-42-WTL-TAB, 2009 WL 2778105, at *2, 4-5 (S.D.Ind. Aug. 28, 2009) (entering summary judgment for defendant on bona fide error defense where firm did not perform bankruptcy scrub but prioritized related mail, trained employees, relied on clients to forward updates, and used computer to flag cases where consumer filed for bankruptcy).

Van Ru's agreement with Northshore also parallels that of the *Ross* defendant with its creditors. *Id.* (Dkt. 20-1, ¶ B(13); Dkt. 18-3, Ex. C, ¶ 13; Ex. F, 34:24-35:6; Dkt. 17-2, Ex. G, at 53; Dkt. 21-1, ¶¶ 19-20.) The FDCPA does not require debt collectors to independently verify their creditors' representations about the validity of the debts they refer. *See e.g., Hartman*, 191 F.Supp.2d at 1045; *Krawczyk v. Centurion Capital Corp.,* No. 06-CV-6273, 2009 WL 395458, at *11 (N.D.Ill. Feb. 18, 2009) (finding reasonable that debt collector received consumer's social security number from creditor and did not use this to verify debt because requiring this across the board would prove untenable).

Van Ru not only agrees to promptly cease any attempt to collect on a debt once it receives notice of its discharge, but provides evidence of fulfilling this practice. When Van Ru received notice about Polster's Debts #1, 2, and 3, Van Rue ceased communications with her and returned the accounts to Northshore. (Dkt. 18-3, Ex. 3, at 13-15; Dkt. 18-5, Ex. E, ¶ 5.)

Van Ru thus pursues procedures in line with those affirmed as reasonable in *Ross*. *See* 480 F.3d at 497 (citing *Hyman*, 362 F.3d at 968-69). Van Ru even provides procedures more robust than those of the defendant in *Hyman*, whose procedures were affirmed as reasonable, thus providing the grounds for the bona fide error defense. *See Ross*, 480 F.3d at 497 (citing *Hyman*, 362 F.3d at 968-69).

The FDCPA does not require that debt collectors "take every conceivable precaution to avoid errors." *See Kort*, 394 F.3d at 539 (quoting *Hyman*, 362 F.3d at 968). The FDCPA intends to prevent unscrupulous companies from using threatening practices to bully the unwitting into paying debts they do not legally owe, not to punish companies as here that strive to police their procedures diligently and err in spite of those efforts.

The Court therefore finds Van Ru's safeguards reasonable, thus entitling Van Ru to the bona fide error defense. *See* 15 U.S.C. § 1692k(c); *Turner*, 330 F.3d at 996-97. Accordingly, the Court enters summary judgment on these claims in Van Ru's favor.

**II. FDCPA §§ 1692f and 1692c(a)(2) (Counts III and IV)**

As an initial matter, Van Ru points out that Polster focuses solely on Counts I and II in her Motion for Summary Judgment and neglects to argue summary judgment on Counts III and IV. (Dkt. 20, at 2-3.) Polster responds that "only one violation is necessary to support a motion for summary judgment" and that "Plaintiff has every intention of pursuing these claims at trial…" (Dkt. 22, at 2.) The Court construes Polster's position as relying on the approach taken

by a non-moving party responding to a moving party's motion for summary judgment, where the non-moving party need only survive summary judgment on one claim in order to proceed toward trial. Yet as the moving party in its own Motion for Summary Judgment (Dkt. 17), Polster should have raised any argument relating to Counts III and IV in that Motion, as parties abandon any ground they do not "press" as a movant. *See Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (internal citations omitted). Given her Response, the Court construes Polster's omissions of Counts III and IV as inadvertent and proceeds to consider the claims on their merits. To the extent that Polster decided to forego discussion on these matters, however, the Court considers these claims waived and unpreserved for appeal. *See id.* (citing King v. Stevenson, 445 F.2d 565, 571 (7th Cir. 1971)).

### A. FDCPA § 1692f (Count III)

Van Ru contends that its May 2015 letters merely provide information to Polster as required under § 1692g(a) and therefore do not use "unfair or unconscionable means to collect or attempt to collect a debt." (Dkt. 20, at 7.) Polster argues that simply sending the letters violates this section because the FDCPA imposes a strict liability standard. (Dkt. 21, at 3.)

In precluding "unfair" or "unconscionable" collections or attempts, Section 1692f provides a non-exhaustive list of examples of prohibited conduct. *See* 15 U.S.C. § 1692f. The Court looks again to the text of the collection letter analyzed in *Turner* and quoted above. The language in the *Turner* letter tracks "almost to the word" the elements of the written notice that the FDCPA requires collectors to send consumers within five days after their initial communication with a consumer. *See* 15 U.S.C. § 1692g(a); *Turner*, 330 F.3d at 994, 997-98. Accordingly, the *Turner* court did "not see how a reasonable jury could conclude that furnishing this information would…be an unfair or unconscionable means of debt collection…." *Id.* at 998

15

(internal quotations omitted) (affirming summary judgment in favor of the defendant on this claim); *see also Buckley v. Afni, Inc.*, 133 F.Supp.3d 1140, 1148 (N.D.Ill. 2016) (where collection letter set forth amount of alleged debt and collector's contact information, defendant provided information necessary to verify debt and was entitled to summary judgment because no § 1692f violation had occurred).

Section 1692g(a) requires debt collectors to promptly provide identified consumers with written notice containing, in pertinent part, the amount of their debt, the creditor's name, and a statement that the consumer has thirty days to contest the debt's validity. *See* 15 U.S.C. § 1692g(a). This is precisely what Van Ru's May 2015 letters provide: that Van Ru holds debts from Polster in an amount disclosed; that creditor Northshore referred the debt; and that Polster can dispute the validity of the debt within thirty days of receipt. (*See* Dkt. 18-3, Exs. 1 and 2, at 7, 10.) Van Ru's letter also provides language substantially similar to the letter in *Turner*. *See* 330 F.3d at 997-98. Like the court in *Buckley*, under *Turner* the Court does not see how Van Ru's letter would constitute "unfair or unconscionable means" of debt collection. *See id.*; *see e.g.*, *Buckley*, 133 F.Supp.3d at 1148. Van Ru's letters provided Polster with the means to verify and dispute the debt she had discharged during bankruptcy. Viewed in a light favorable to Polster, Van Ru's letter did not constitute a violation of § 1692f. Summary judgment is appropriate for Van Ru on this claim.

### B. FDCPA § 1692c(a)(2) (Count IV)

Van Ru argues that Polster also cannot succeed on her § 1692c claim because that would require Van Ru to possess actual knowledge that an attorney was representing the plaintiff when Van Ru sent her the May 2015 letters. (Dkt. 20, at 7; Dkt. 23, at 7-8.) Polster, on the other hand, claims that Van Ru should have known that Polster had an attorney to represent her in debt

collection proceedings because Van Ru knew, or should have known, that she had a bankruptcy attorney to represent her in bankruptcy proceedings. (Dkt. 21, at 4; Dkt. 22, at 2.)

Section 1692c(a)(2) prohibits a debt collector from communicating with a consumer in connection with the collection of a debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt *and* has knowledge of, or can readily ascertain, such attorney's name and address…" 15 U.S.C. § 1692c(a)(2) (emphasis added). The statute's conjunction between these two clauses makes liability under this section "depend on the actor's knowledge." *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 729-30 (7th Cir. 2004). Courts do not ask whether a debt collector could ascertain that an attorney represents a plaintiff because the information must have been available in, for example, a creditor's files. *See e.g.*, *id.* The statute also requires the debt collector to know that an attorney represents the consumer "with respect to such debt," so even if a debt collector knows that a bankruptcy attorney represents a consumer with regard to certain debts, the debt collector does not necessarily have reason to know if the attorney represents her regarding other debts. *See e.g.*, *Miller v. Allied Interstate, Inc.*, No. 04-CV-7126, 2005 WL 1520802, at *4 (N.D.Ill. June 27, 2005) (citing *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991)).

To withstand summary judgment on a 1692c(a)(2) claim, "a plaintiff must present evidence from which it can be reasonably inferred that defendant knew that [plaintiff] was represented by an attorney." *See e.g.*, *Dore v. Five Lakes Agency, Inc.*, No. 14-CV-6515, 2015 WL 4113203, at *3-4 (N.D.Ill. July 8, 2015) (granting summary judgment for defendant where plaintiff only argued that defendant "should have known" that attorney represented her regarding specific debts because debt collector had possessed documents showing attorney representing her in bankruptcy proceedings). *Cf. Bianchi v. The Bureaus, Inc.*, No. 05-CV-5769, 2008 WL

597587, at *2 (N.D.Ill. Feb. 27, 2008) (denied summary judgment against plaintiff where bankruptcy court listed plaintiff's attorney on notice of filing and court mailed notice about that bankruptcy to defendant, thus creating fact dispute on whether defendant had actual knowledge).

As a threshold matter, Polster mischaracterizes the standard. Polster argues that a plaintiff can show this claim by only demonstrating that defendant "should have known" that an attorney represented her. (Dkt. 21, at 4.) Polster tries to accomplish this by selectively quoting clauses from Section 1692c(a)(2). Specifically, Polster omits the conjunction "and" such that the statute appears to apply either when the debt collector knows "…*or* can readily ascertain…" that an attorney represented the consumer. (*See id.*) (emphasis added.) However, as written, Section 1692c(a)(2) requires two components: (1) "the debt collector knows the consumer is represented by an attorney with respect to such debt," *and* (2) "has knowledge of, *or* can readily ascertain, such attorney's name and address…" *See* 15 U.S.C. § 1692c(a)(2). An option only exists as to how to show that a debt collector can come by the attorney's identity and contact information. Still, any claim under this section must show that the debt collector "knows" that an attorney represents the consumer. *See Randolph*, 368 F.3d at 729-30; *Dore*, 2015 WL 4113203, at *3-4; *Bianchi*, 2008 WL 597587, at *2. Curiously, the only case to which Polster cites on this issue also relied on the debt collector's actual knowledge. *See Robin v. Miller and Steeno, P.C.*, No. 13-CV-2456 SNLJ, 2014 WL 3734318, at *1-2 (E.D.Mo. July 29, 2014) (where plaintiff called debt collector and gave contact information for the bankruptcy attorney representing her).[9] To read the statute otherwise risks a Catch-22 for debt collectors who, on the one hand, would need to avoid a violation under Section 1692c(a)(2) by ascertaining whether an attorney represents

---

[9] Polster also argues that it could not find any case law requiring a collection agency to have "actual" knowledge about the bankruptcy itself. (Dkt. 21, at 5.) This confuses the statute's requirement, which only asks for a debt collector's actual knowledge that a bankruptcy attorney represents the consumer in question, and does not look to whether the collector knows about the bankruptcy itself. *See* 15 U.S.C. § 1692c(a)(2).

their consumer, while on the other hand risking through their due diligence a violation of Section 1692c(a)(2) or 1692c(b) should it contact a represented consumer or some other third-party who is not in fact representing the consumer. *See e.g.*, *McKeown v. May Jane M. Elliot P.C.*, No. 07-12016-BC, 2007 WL 4326825, at *6 (E.D. Mich. Dec. 10, 2007).

Notwithstanding, Polster accurately raises the undisputed fact that Van Ru received notice about Polster's bankruptcy filing on March 17, 2015, which listed Polster's bankruptcy attorney. (*See* Dkt. 21-1, ¶ 8; Dkt. 18-3, Ex. C, ¶ 9; Dkt. 18-6, Ex. F, 16:15-19.) Polster argues that this creates a triable issue of fact as to whether Van Ru knew that an attorney represented Polster for the debts at issue in this case. (See Dkt. 20-1, ¶ B(12); Dkt. 21-1, ¶¶ 16, 18; Dkt. 18-3, Ex. C, ¶ 3; Dkt. 18-5, Ex. E, ¶ 5; Dkt. 18-6, Ex. F, 15:3-9; 26:6-13.) However, Polster still does not present evidence from which it can be reasonably inferred that defendant knew that she was represented by an attorney regarding her debt collection.

Like the debt collector in *Dore*, Polster only argues that Van Ru "should have known" that an attorney represented her because the debt collector could have accessed documents showing that she had attorney representation during her bankruptcy proceedings. *See e.g.*, *Dore*, 2015 WL 4113203, at *3-4. But, as in *Dore*, attorney representation in one capacity does not necessarily entail attorney representation in a separate, albeit related, capacity. Here, the attorney who represented Polster in her bankruptcy proceedings indicated to her that he would refer her to a different attorney if anyone sought to collect a debt protected by her bankruptcy. (Dkt. 21-1, ¶ 27; Dkt. 18-1, Ex. A, 43:4-44:1; 53:6-18.) In fact, Polster's bankruptcy attorney referred her to the attorney representing her in this case. (*Id.*; Dkt. 3.) Van Ru therefore could not have inferred from Polster's representation during her bankruptcy proceedings that she would have representation regarding her debt collection – they were, in fact, different attorneys. In

19

other words, even assuming Van Ru knew that Polster, as the consumer linked with Debts #4 and 5, had filed for bankruptcy in March 2015 and enjoyed representation during those proceedings, Van Ru could not have concluded that representation over her bankruptcy would necessarily imply representation over her debt collection, given that Polster in fact had separate counsel to represent her in these matters. *See e.g.*, *Dore v.*, 2015 WL 4113203, at *3-4; *Bianchi*, 2008 WL 597587, at *1-2. Besides, and significantly, no one notified Van Ru that Polster would have representation in handling those trying to collect on her debts. (Dkt. 21-1, ¶¶ 28-29.)

Accordingly, even in a light most favorable to Polster, she does not present evidence from which it can be reasonably inferred that Van Ru knew an attorney represented her when it sent her letters regarding Debts #4 and 5.

Summary judgment is proper for Van Ru on this claim. Because the Court finds summary judgment proper for Van Ru on each claim, it does not need to reach whether Polster shows actual damages. (*See* Dkt. 19-1, at 7-8; Dkt. 21, at 7-8; Dkt. 23, at 9-10.)

## CONCLUSION

For these reasons, the Court grants Van Ru's Motion for Summary Judgment against Polster [19] and denies Polster's Motion for Summary Judgment against Van Ru [17].

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: ___3/31/2017____

20